UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LISA MICHELLE SUTHERLAND,

    Plaintiff,

1.                                         CASE NO.: 3:19-cv-1413-T-MAP

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

Plaintiff appeals the administrative law judge's (ALJ) determination that she is not entitled to disability insurance benefits (DIB) or period of disability benefits. She claims the ALJ erred by failing to properly weigh her treating doctor's opinions and failing to properly evaluate her credibility. Upon consideration, I agree and find remand necessary.[1]

    A.  *Background*

Plaintiff, who was fifty years old at the time of her alleged disability onset date, June 30, 2015, claims disability due to glaucoma, type II diabetes, neuropathy, high blood pressure, arthritis in all joints, and cataracts (R. 97). She graduated from high school and worked as a cafeteria manager/ kitchen supervisor for over thirty-three years. After working consecutively for twenty-four years, she stopped working in June 2015 due to difficulty with her vision related to glaucoma (R. 267). Although her eyesight improved with treatment, her type II diabetes worsened.

---

[1] The parties consented to my jurisdiction in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73. *See* docs. 12, 15.

Plaintiff's peripheral neuropathy has resulted in multiple amputations of toes on both of her feet and loss of sensation in her extremities.

After a hearing, the ALJ found Plaintiff has the severe impairments of type II diabetes mellitus with peripheral neuropathy; closed non-displaced fracture of the second metatarsal, left foot; osteomyelitis; history of toe amputation; chronic obstructive pulmonary disease; osteoarthritis; obesity; and mixed anxiety/ depressive disorder (R. 17).  Despite these severe impairments, the ALJ concluded she is capable of performing light work except "sit/stand option every 30 minutes' never climb ladders, ropes, and scaffolds; never balance; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl; no use of lower extremity foot controls; no concentrated exposure to extreme heat or cold, respiratory irritants, vibrations, moving mechanical parts, or unprotected heights; requires handheld assistive device to reach the workstation, but does not require it at the workstation" (R. 19).  With this residual functional capacity (RFC), the ALJ concluded Plaintiff can perform sedentary unskilled jobs such as credit authorizer clerk; and light unskilled jobs such as cashier, information clerk, or interviewer (R. 26). Thereafter, Plaintiff exhausted her administrative remedies and filed this action.

*B. Standard of Review*

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:   whether the claimant is currently engaged in substantial gainful activity;

2

whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of her age, education, and work experience.  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 CFR § 404.1520(f). In reviewing the ALJ's findings, this court must ask if substantial evidence supports them. *Richardson v. Perales*, 402 U.S. 389 (1971).  The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists.  *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services,* 21 F.3d 1064 (11th Cir. 1994).   The court may not reweigh the evidence nor substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal.  *Keeton, supra,* at p. 1066; *Jamison v. Bowen,* 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

*C. Discussion*

Plaintiff claims the ALJ erred by failing to assign proper weight to the opinions of George Platt, the treating family practitioner who treated her for over ten years.   In particular, she asserts the ALJ erred by failing to provide "good cause" for rejecting Dr. Platt's work-preclusive limitations and by assigning more weight to the opinions of a state agency consultative physician

3

who rendered his opinions eighteen months before Dr. Platt's assessment.   Upon consideration, I agree for the reasons set forth herein.

A court must give a treating doctor's testimony substantial or considerable weight unless "good cause" is shown to the contrary.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the:   (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).   An ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.3d at 1240.   A treating source's opinion that a claimant is unable to work is not a "medical opinion" as defined by the regulations, but is an opinion on an issue reserved to the Commissioner.   20 C.F.R. § 404.1527(e).   Where the record contains such an opinion, the ALJ must evaluate all the evidence to determine the extent it is supported by the record, but an opinion that a claimant is unable to work is never entitled to controlling weight or special significance. S.S.R. 96-5p, 1996 WL 374183, *1-3 (S.S.A.).

On November 2, 2018, Dr. Platt completed a "Treating Source Statement- Physical Conditions" indicating he had seen Plaintiff for "10+ years 3-6 visiting yearly" (R. 1143).   Dr. Platt opined that Plaintiff was limited to lifting up to ten pounds rarely, and would be off-task 25% of the time and absent from the workplace for four days/month (R. 1143-1144).   Supporting these limitations, Dr. Platt explained Plaintiff "requires assistive device to walk and maintain balance" (R. 1144).   Dr. Platt further opined that during an eight-hour workday, Plaintiff can stand and

4

walk for one hour and sit for eight hours because "pt requires assistive device to ambulate, has severe neuropathy" (R. 1144).

In assigning little weight to these opinions, the ALJ referenced the treatment record that showed Plaintiff was "healthy-appearing," had a "normal gait and station," and "had normal movement in her extremities, with grossly intact sensation" (R. 23-24). As a result, the ALJ dismissed the limitations imposed by Dr. Platt, concluding instead that the evidence "supports limitation to light exertion with a sit-stand option at 30-minute intervals" (R. 23). He found that "[t]he claimant's neuropathic pain, and history of diabetic foot ulcers and toe amputations supports restriction on the use of lower extremity foot controls, and on ladder climbing" … "The claimant's report of falling because she could not feel her feet, and evidence of toe fracture sustaining in a fall, supports restriction on balancing" (R. 23). The ALJ also explained:

> The evidence of the claimant's fall and Dr. Weed's recommendation for balance training supports the use of a walker to reach the workstation, but does not support use of the walker at the workstation. The claimant's normal motor strength is consistent with light lifting, and with a sit/stand option. The claimant testified that she could stand sit or stand for 30 minutes, which is accommodated by the sit/stand option. The claimant had no difficulty with attention and concentration at the consultative psychological examination (Exhibit 13F). The claimant did not endorse difficulty with concentration, understanding, or following instructions in her report of function (Exhibit 7E at 6).

(R. 24).

As Plaintiff asserts, however, the evidentiary record as a whole shows deteriorating neuropathy and osteomyelitis resulting in multiple amputations. In sum, she presented in February 2015 to Dr. Platt with a diabetes-related open foot wound (R. 465); she had a lesion on her medial right toe and sharp pain in her right great toe and Dr. Platt referred her to podiatrist Jerry Weed (R. 464). Dr. Weed assessed chronic osteomyelitis of the ankle and foot; an ulcer on her foot; acquired keratoderma; hallux rigidus; and tenosynovitis of the foot and ankle (R. 639-

5

40). Dr. Weed performed an excisional full thickness debridement through subcutaneous tissue to remove all fibrin, necrotic and non-viable tissue to capillary bleeding (R. 639, 642). A foot x-ray in March 2015 revealed osteoporotic arthritis of the first metatarsophalangeal (MTP) joint and hallux valgus (R. 582). Dr. Weed prescribed Augmentin for her cellulitis and toe abscess (R. 642). Thereafter, in December 2015, Dr. Platt's exam revealed diminished or absent sensation on the toes of both of Plaintiff's feet (R. 456), and in June 2016, examination revealed a lesion in the left great toe with pain to dorsal foot and ankle, edema and erythema to the lower leg (R. 451). In August 2016, Dr. Weed performed a debridement of Plaintiff's left great toe; prescribed diabetic shoes and oral antibiotics for cellulitis; diagnosed hammer toe of her left foot (R. 646-48). In September 2016, Plaintiff visited the Flagler Hospital Emergency Room with worsening left foot infection and unfortunately, her condition had deteriorated requiring IV antibiotics. MRI revealed osteomyelitis of the first proximal phalanx and distal phalanx and ulceration of the first digit (R. 436). Later that month she required insertion of a PICC line for long term IV antibiotics, and Dr. Weed advised that amputation would be needed if this treatment failed (R. 659). An October 2016, foot x-ray showed plantar calcaneal spur and calcinosis of the Achilles tendon (R. 390). Plaintiff's IV antibiotics were discontinued, she experienced a recurrent infection requiring a second round of oral antibiotics therapy, the antibiotic therapy failed, and her condition deteriorated again. This time cellulitis spread to her foot and more ulcers opened (R. 625). An MRI of the left foot in December 2016 showed findings consistent with acute osteomyelitis involving the proximal and distal phalanx of the first digit with soft tissue edema and fluid collection with abscess (R. 585). On December 27, 2016, she underwent amputation of the left great toe with first metatarsal resection by Dr. Weed (R. 625-626).

Medical records from 2017 reveal that Plaintiff's diabetes-related health problems continued. In January 2017, Plaintiff was prescribed a walker for partial left heel weight bearing. In March 2017, she reported joint pain and balance issues as a result of her toe removal (R. 752). She was assessed with diabetic polyneuropathy and prescribed Gabapentin. Records show she used a wheeled walker with seat (R. 753). A March 2017 exam by Dr. Weed revealed ulcers on toes on both of her feet as well as osteomyelitis of a toe on her right foot. Unfortunately, amputation of the toe on her right foot was recommended due to chronic ulcers and minimal motion causing worsening pressure even with diabetic shoes (R. 795). On March 13, 2017, Plaintiff underwent a disarticulating amputation of the right great toe and metatarsal head resection. On the same day Dr. Weed also performed a debridement of the left foot (R.797). Dr. Weed's April 4, 2017, record reveals multiple problems: a non-pressure chronic ulcer on her left foot with the fat layer exposed, osteomyelitis of a toe on her right foot, type 2 diabetes mellitus with diabetic polyneuropathy, cellulitis of the right foot (he removed her surgical sutures), a seroma, and an ulcer on the right foot with the fat layer exposed (he removed the necrotic and unviable tissue) (R. 827). Dr. Weed instructed Plaintiff to continue using her walker, prescribed antibiotics, and noted on exam mild dorsal right foot pain with light touch diminished and absent protective threshold (R. 828-29). July 2017 records show she again needed a PICC line inserted to deliver antibiotics (R. 905). She completed a ten-week course of antibiotics (R. 928) and an August 2017 comprehensive diabetic foot exam revealed diminished sensation and motor strength (R. 868-70). In September 2017, Plaintiff had an ulcer on her distal second toe of her left foot that had a fat layer exposed as well as swelling and a split in the toe (R. 866). Plaintiff's infection progressed and at her next exam in October 2017, Dr. Weed noted dark red and black necrotic tissue and

7

gangrene on her toe, worsening osteomyelitis, and failed antibiotic treatment once again (R. 859). Exam revealed pain and swelling as well as diminished light touch and absent protective threshold (R. 860). She underwent amputation of her second left toe due to osteomyelitis and gangrene (R. 1223-24). Her problems continued in November 2017, and Dr. Weed recommended surgery for her acquired hammer toe of the right foot and prescribed amoxicillin (R. 848). In December 2017, after exhausting all conservative care options, Plaintiff underwent surgery to correct her acquired hammer toe deformity on the second, third, and fourth toes of her right foot (a flexor tenotomy and capsulotomy) (R. 846).

Unfortunately, records from 2018 generally show continued difficulty walking, increased pain that awakened her at night, diminished light touch, absent protective threshold, recurrent ulcers, and at least one fall (R. 877, 958-59, 965, 1259-63). More specifically, in January 2018, Plaintiff's right foot felt better and she cleaned several homes but developed a blister on her left foot which turned into an ulcer (R. 1026). By March 2018, she again needed a PICC line for delivery of long-term antibiotics (R. 903). Unfortunately, Plaintiff reported that she had fallen, and x-ray revealed a closed non-displaced second metatarsal bone fracture of the left foot. She was prescribed surgical shoes and used her walker to keep pressure off her foot (R. 1014, 1016-17). A March 2018 left foot MRI showed severe tendonitis, a tear and proximal retraction of the flexor tendon of the second digit, chronic osteomyelitis of the second metatarsal, displaced fracture of the neck of the second metatarsal and extensive inflammation (and the MRI report noted that the extensor tendon of the second digit was not well seen, likely due to edema) (R. 839). In April 2018, Plaintiff had diffuse pain, diminished light touch, absent protective threshold, and Dr. Weed recommended immobilization of her left foot to aid in fracture healing and prescribed a CAM

walker (R. 1080-81). She continued to need the walker for all ambulation due to her unhealed nondisplaced fracture of the second metatarsal bone of her left foot and skin ulcer with exposed fat layer (which required debridement) in May 2018. Dr. Weed placed her on bone growth stimulator to aid healing of the fracture in an effort to prevent resection (R 964). She underwent two debridement procedures for a skin ulcer on her left foot, continued to require a CAM walker for ambulation and was diagnosed with atherosclerosis of native artery of both lower extremities (R. 1262). Plaintiff reported difficulty walking and climbing stairs and in October 2018, fell while walking across a flat surface in her home because she could not feel her feet (R. 1254). Dr. Weed suggested gait/ balance therapy and balance braces (R. 1253). By 2018, Plaintiff began experiencing neuropathy in her upper extremities too. She reported multiple burns on her hands due to lack of feeling and on exam Dr. Platt noted multiple burns on her wrist and hand (R.1106-07).

In light of the medical evidence summarized above, I find the ALJ's analysis of the opinion evidence misses the mark and conclude she has not provided good cause for assigning only little weight to the opinion of Plaintiff's long-time treating physician, Dr. Platt. Thus, remand is needed.

Because remand is needed, it is not necessary for me to address Plaintiff's remaining arguments. However, because she intertwined the argument that the ALJ erred in evaluating the opinions of the state agency consultant within her argument concerning the weight accorded to Dr. Platt's opinions, I will address it. The non-examining state agency consultant found her capable of performing light work. Plaintiff points out the consultant reviewed evidence dated only through April 2017, and did not have the opportunity to review or consider the subsequent eighteen

months of records that included additional foot ulcers, IV antibiotic treatment, a fracture sustained in a fall, continued use of a walker, and a recommendation for balance training.   In assigning only "partial weight" to the consultant's opinions, the ALJ noted that the overall evidence showed Plaintiff developed additional foot ulcers when she attempted to increase her activities, required additional IV antibiotics, sustained a nondisplaced fracture in a fall, and that balance therapy was recommended.   He even indicated these subsequent developments supported a finding that Plaintiff is more limited than the consultant's findings (R. 23).   Because the evidence available for the state agency consultant to review in April 2017 was clearly incomplete, on remand the ALJ may decide that an updated consultative review of the evidence may be helpful.

*D.  Conclusion*

For the reasons stated above, the ALJ's decision is not supported by substantial evidence. It is ORDERED:

1. The ALJ's decision is REVERSED AND REMANDED for further administrative proceedings consistent with this Order; and

2. The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on July 31, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE